IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

UNITED STATES OF AMERICA     :   CRIMINAL NO. 11-575-1
                             :
          v.             :   Philadelphia, Pennsylvania
                             :   July 19, 2012
JEFFREY LYNN FORBES        :   9:08 o'clock a.m.
. . . . . . . . . . . . . . . . . .

CHANGE OF PLEA HEARING
BEFORE THE HONORABLE TIMOTHY R. RICE
UNITED STATES MAGISTRATE JUDGE

- - -

APPEARANCES:

For the Government:     ASHLEY K. LUNKENHEIMER, ESQUIRE
                        U.S. Attorney's Office
                        615 Chestnut Street, Suite 1250
                        Philadelphia, PA    19106

For the Defendant:      STEVEN F. O'MEARA, ESQUIRE
                        130 East State Street
                        Media, PA    19063

- - -

Audio Operator:        Sharon A. Hall

Transcribed by:        Tracey J. Williams, CET

(Proceedings recorded by For the Record Gold digital sound
recording; transcript produced by AAERT-certified
transcriber.)

- - -

Laws Transcription Service
48 W. LaCrosse Avenue
Lansdowne, PA 19050
(610)623-4178

1          (The following occurred in open court at 9:08

2    o'clock a.m.:)

3          THE COURT:  Good morning, everyone.

4          ALL:  Good morning, your Honor.

5          THE COURT:  Mr. O'Meara, Mr. Forbes, Ms.

6    Lunkenheimer.  Please be seated.

7          THE DEFENDANT:  Thank you.

8          MR. O'MEARA:  Thank you.

9          THE COURT:  Mr. Forbes, would you just please stand

10   and we'll swear you, please?

11         Sharon, do you want to do the honors?

12         THE AUDIO OPERATOR:  Please raise your right hand,

13   and state and spell your last name for the record, please?

14         THE DEFENDANT:  Jeffrey Forbes, F-o-r-b-e-s.

15         JEFFREY LYNN FORBES, Affirmed.

16         THE AUDIO OPERATOR:  Thank you.

17         THE DEFENDANT:  Thank you.

18         THE COURT:  Okay.  You can be seated, sir.

19         THE DEFENDANT:  Thank you, sir.

20         THE COURT:  Sir, what I'm going to do -- it's my

21   understanding you are here to plead guilty, is that correct?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Okay.  I'm going to ask you -- you can

24   stay seated -- I'm going to ask you a bunch of questions just

25   to determine if you're doing that knowingly and voluntarily,

1  and to make sure you understand all the rights you've giving
2  up by pleading.  Okay?
3         THE DEFENDANT:  Thank you, your Honor.
4         THE COURT:  So you're going to just answer yes or
5  no.  If you don't understand something or you want me to
6  repeat something, just tell me that.  If you need time to
7  talk to Mr. O'Meara, he's a very experienced lawyer, I'll
8  give you all the time you need to speak to him and feel free
9  to ask him any questions, you know, during the morning that
10 you feel are necessary.  All right?
11        THE DEFENDANT:  Thank you, your Honor.
12        THE COURT:  Okay.  And could you state your full
13 name and your age, please?
14        THE DEFENDANT:  Jeffrey Lynn Forbes, age 52.
15        THE COURT:  And how far did you go in school?
16        (Pause.)
17        THE DEFENDANT:  Well, a GED and a little bit of
18 college.
19        THE COURT:  All right, that works, good.
20 Congratulations on that.  And I know you can speak English;
21 can you read and write English?
22        THE DEFENDANT:  Yes sir.
23        THE COURT:  All right.  Have you ever had or been
24 treated for drug or alcohol addiction or mental illness?
25        THE DEFENDANT:  No, your Honor.

1          THE COURT:  Okay.  So are you taking anything now,

2     any medications or --

3          THE DEFENDANT:  Yes, yes, your Honor.

4          THE COURT:  What are you taking?

5          THE DEFENDANT:  Exalgo.

6          THE COURT:  What's that?

7          THE DEFENDANT:  Uh...

8          THE COURT:  Or what is it for?

9          THE DEFENDANT:  It's for chronic pain, sir.

10         THE COURT:  Chronic pain?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Okay.  Does that affect your ability to

13    understand --

14         THE DEFENDANT:  No, your Honor.

15         THE COURT:  -- anything?

16         THE DEFENDANT:  No, your Honor.

17         THE COURT:  Okay.  Is your head clear today --

18         THE DEFENDANT:  Yes.

19         THE COURT:  -- you understand everything?

20         THE DEFENDANT:  Yes, sir, I do.

21         THE COURT:  Okay.  So no drug addiction issues?

22         THE DEFENDANT:  No, sir.

23         THE COURT:  Have you had any alcohol at all

24    recently?

25         THE DEFENDANT:  No, sir.

1        THE COURT:  All right.  And you generally feel okay

2   today?

3        THE DEFENDANT:  Yes, sir.

4        THE COURT:  All right.  Now, has Mr. O'Meara gone

5   over the charges against you and fully explained to you your

6   trial rights and your defenses?

7        THE DEFENDANT:  Yes, your Honor.

8        THE COURT:  And I know you're not entering a plea

9   agreement, but you're just going to plead to the charges with

10  no promises from the Government, is that correct?

11       THE DEFENDANT:  That is correct, your Honor.

12       THE COURT:  All right.  Now, do you feel like you've

13  had enough time to talk the case over with Mr. O'Meara?

14       THE DEFENDANT:  Yes, your Honor.

15       THE COURT:  And so far has he done everything that

16  you wanted him to do?

17       THE DEFENDANT:  Yes, your Honor.

18       THE COURT:  Other than the open plea, has anybody

19  made any promises to you to get you to plead guilty?

20       THE DEFENDANT:  No, your Honor.

21       THE COURT:  Do you understand that no one can

22  guarantee what sentence you'll receive from me?

23       THE DEFENDANT:  I understand that, your Honor.

24       THE COURT:  All right.  Did anyone use force,

25  violence or intimidation to try to get you to plead?

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  All right.  And you're pleading guilty

3   because it's your own free will and your own decision?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Did anyone tell you what to say today?

6          THE DEFENDANT:  No, your Honor.

7          THE COURT:  All right.  Do you understand that if

8   you're not a United States citizen that a guilty plea could

9   subject you to deportation?

10         THE DEFENDANT:  I don't think that's a problem, your

11   Honor, but thank you.

12         THE COURT:  Okay, very good.  Have you ever been on

13   any type of supervision before, probation, parole or ARD?

14         THE DEFENDANT:  No, your Honor.

15         THE COURT:  So you have no prior criminal record?

16         THE DEFENDANT:  No, your Honor.

17         THE COURT:  Okay.  It's my understanding for the one

18   charge you're pleading guilty to that the maximum penalty is

19   one year in prison, a maximum of one year supervised release

20   -- did I say something wrong?

21         MS. LUNKENHEIMER:  Well, he's just charged in three

22   counts.

23         THE COURT:  Three counts, okay.  Why don't you go

24   through it then --

25         MS. LUNKENHEIMER:  I'm sorry.

1          THE COURT:  -- as long as you're up.

2          MS. LUNKENHEIMER:  I'm sorry, I wasn't trying to --

3          THE COURT:  That's all right.

4          MS. LUNKENHEIMER:  He's faced with three counts of

5     the same thing, attempted possession of Oxycodone and

6     Fentanyl.  There are two controlled substances in there, the

7     Government would -- if they proved either, he would face the

8     same amount.  So it's a little confusing, but the total will

9     be I think self-explanatory, so let me just go through it.

10         For the Counts 1 through 3, if you were found guilty

11    of attempting to possess Oxycodone, you would face a maximum

12    of one year in prison, a maximum of one year of supervised

13    release, a $1,000 fine and a $100 special assessment.  Counts

14    1 through 3 also charge the attempted possession of Fentanyl,

15    that carries the same maximums, but you don't double them

16    because there were two substances in each charge, so it's

17    only one total amount.  So the total maximum sentence you

18    face for the three counts of the information are a maximum of

19    three years of imprisonment, a maximum of one year of

20    supervised release, a $3,000 fine and a $300 special

21    assessment.

22         You also need to understand that if you are placed

23    on a term of supervised release and you violate the

24    conditions of your supervised release, the Court can sentence

25    you to an additional term of imprisonment of up to one year

1   without any credit for time you've already served, meaning

2   that you could end up serving more time than the maximum I

3   just read because of the supervised release violation.

4           THE COURT:  Okay.  So that's the maximum sentence

5   you could receive if you plead guilty today; do you

6   understand that?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  Now, this case is going to be governed

9   by what's called the Sentencing Guidelines and I'm required

10  to consider those Guidelines at sentencing, but I'm allowed

11  to either depart upward or downward from whatever those

12  Guidelines are.  I don't know what they are as we sit here,

13  the Probation Officer will calculate that.  So do you

14  understand that the Guidelines are going to also affect the

15  sentencing process?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  The Probation Officer will prepare

18  what's called a presentence report, which will set forth your

19  Guideline range.  And if you disagree with the report, you

20  can make objections, and either the Probation Officer will

21  rule on them or, if he can't resolve them with you, I'll make

22  a ruling on them.  But regardless, if you don't like my

23  ruling, your guilty plea is still going to be in place.  Do

24  you understand that?

25          THE DEFENDANT:  I understand, your Honor.

1    THE COURT:  Okay.  Do you understand that even if
2  your attorney and the Government attorney agree on facts or
3  make recommendations or requests at sentencing that I don't
4  have to do what they ask me?
5    THE DEFENDANT:  I understand, your Honor.
6    THE COURT:  Okay.  And if I disagree with what they
7  ask, even if they do it jointly, your guilty is still
8  binding?
9    THE DEFENDANT:  I understand, your Honor.
10    THE COURT:  Do you understand that there's no more
11  parole and, if you're sentenced to prison, you have to serve
12  the full prison term?
13    THE DEFENDANT:  I understand, your Honor.
14    THE COURT:  Do you understand that you can appeal
15  your sentence to a higher court, which could modify or set
16  aside the sentence or order me to resentence you?
17    THE DEFENDANT:  I understand, your Honor.
18    THE COURT:  Do you understand the Government could
19  also appeal the sentence if they think I have made errors?
20    THE DEFENDANT:  Yes, your Honor.
21    THE COURT:  Now, you have certain constitutional
22  rights that I'd like to go over with you.  The first is that,
23  as you sit here today, you are presumed innocent of these
24  charges and the only way that presumption can be removed is
25  if the Government proves your guilt beyond a reasonable

1  doubt.  By pleading guilty, you're giving up that

2  presumption?

3          THE DEFENDANT:  I understand, your Honor.

4          THE COURT:  Do you understand that you have a right

5  to the assistance of a lawyer, Mr. O'Meara, at every stage of

6  the proceedings, including before trial, during trial and

7  after trial for any appeals to higher courts, and if you

8  can't afford a lawyer one would be appointed for you free of

9  charge?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  Do you understand that you have a right

12  to plead not guilty and persist in that plea and have your

13  case tried by either a jury of 12 or by a judge?

14         THE DEFENDANT:  I understand, your Honor.

15         THE COURT:  And do you also understand that you have

16  a right to have your case heard by a District Court Judge?

17  You've consented to have a Magistrate Judge resolve your

18  case?

19         THE DEFENDANT:  I understand that, your Honor.

20         THE COURT:  You don't have to do that if you don't

21  want to.

22         THE DEFENDANT:  I understand, your Honor.

23         THE COURT:  Okay.  Do you understand you have a

24  right to a jury who would be drawn from the people who live

25  in the district and you would have -- Mr. O'Meara would be

1    able to assist you in selecting a jury of 12?

2              THE DEFENDANT:  I understand, your Honor.

3              THE COURT:  Do you understand you have a right to

4    have the jury reach a unanimous verdict?  That is, all 12

5    jurors would have to prove -- agree that the Government has

6    proven your guilt beyond a reasonable doubt?

7              THE DEFENDANT:  I understand, sir.

8              THE COURT:  Do you understand you could obtain a

9    subpoena or court order to make witnesses come to court to

10   testify on your behalf?

11             THE DEFENDANT:  I understand, your Honor.

12             THE COURT:  And do you understand that you -- if you

13   were found guilty, you could appeal to a higher court, which

14   could set aside or modify your finding of guilt or give you a

15   new trial?

16             THE DEFENDANT:  I understand, your Honor.

17             THE COURT:  Do you understand that at trial you

18   would have a right to confront the witnesses against you, you

19   would have a right to confront and cross-examine people

20   testifying against you with the assistance of Mr. O'Meara and

21   you're giving up that by pleading guilty?

22             THE DEFENDANT:  I understand that, your Honor.

23             THE COURT:  Do you understand that at trial you

24   don't have to testify or take the witness stand if you don't

25   want to and that, if you elected not to testify, Ms.

1    Lunkenheimer or whoever prosecutes the case could not comment

2    or make any reference about that to the jury?

3          THE DEFENDANT:  I understand, your Honor.

4          THE COURT:  Do you understand that by entering a

5    guilty plea there will be no trial and you're giving up many

6    of the rights I just told you about -- all the rights I just

7    told you about?

8          THE DEFENDANT:  I understand that, your Honor.

9          THE COURT:  Okay.  Now, one other thing I want to

10   talk to you about and I don't know how this is going to play

11   out, but your guilty plea could affect whether you get your

12   job back at Boeing.

13         THE DEFENDANT:  I understand that.

14         THE COURT:  I don't know if it will or it won't, but

15   I want you to know that that could factor in Boeing's

16   decision whether you're guilty of the offenses.

17         THE DEFENDANT:  I understand that, your Honor.

18         THE COURT:  So you don't have to plead guilty if you

19   think that's an issue that you want to fight and try to get

20   your job back.

21         THE DEFENDANT:  I understand, your Honor.

22         THE COURT:  Okay.  Now, if the Government could

23   prove your guilt, they would have to prove two things:  They

24   would have to prove that you intended to commit the crime of

25   illegally possessing a controlled substance, in this case a

1    mixture or substance containing a detectable amount of

2    Oxycodone and Fentanyl; and that thereafter you did an act

3    constituting a substantial step towards the commission of

4    that crime which strongly corroborates your criminal intent.

5    Do you understand that?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  All right.  Now, what I want you to do

8    is sit back and listen, because I'm going to have Ms.

9    Lunkenheimer describe for you the evidence they would

10   introduce at trial to prove your guilt.  And it's very

11   important you listen carefully, because I'm going to ask you

12   if you did all the things she says you did.  And if you

13   didn't do the things she says, I need you to tell me, because

14   you should not plead guilty to something you didn't do.

15             THE DEFENDANT:  I understand, your Honor.

16             THE COURT:  All right?

17             Ms. Lunkenheimer?

18             MS. LUNKENHEIMER:  If this case were to proceed to

19   trial, the Government would introduce evidence through

20   witnesses and documentary exhibits that would establish the

21   following:  That on September 9th, 2011, the Defendant met

22   with an individual cooperating with the Government inside of

23   Building 3-06 on the Boeing Company's Ridley Park,

24   Pennsylvania campus and they went into a back room.  There

25   the Defendant bought five placebo Oxycontin 40 milligram

1  tablets and three placebo Actiq 1200 microgram lollipops from
2  the cooperating individual for $160.
3          On September 23rd, 2011, the Defendant again met
4  with the cooperating individual, this time outside of
5  Building 3-06 on the Boeing campus.  There the Defendant
6  bought two placebo Oxycontin 40 milligram tablets and three
7  placebo Actiq 1200 microgram lollipops for $100.
8          And on September 26th, 2011, the Defendant again met
9  with the cooperating individual outside of Building 3-06.
10 There the Defendant bought one placebo Oxycontin 80 milligram
11 tablet and three Actiq 1200 microgram lollipops from the
12 cooperating individual for $100.
13         Ridley Park, Pennsylvania, the Boeing Company's
14 campus there, is in the Eastern District of Pennsylvania.
15 And the Government would show that at the time the Defendant
16 made those three purchases the Defendant thought -- did not
17 realize that the substances he was purchasing were placebos
18 and thought they were the actual substances.
19         THE COURT:  Okay.  Sir, did you listen to everything
20 Ms. Lunkenheimer said?
21         THE DEFENDANT:  Yes, your Honor.
22         THE COURT:  Okay.  Mr. Forbes, did you commit those
23 violations and do those acts that she outlined?
24         THE DEFENDANT:  I believe so, yes, your Honor.
25         THE COURT:  Do you --

1          THE DEFENDANT:  No -- yes, your Honor.

2          THE COURT:  Okay.  I just want to make sure, if you

3    have any hesitation --

4          THE DEFENDANT:  No, I have no hesitation; no, sir.

5          THE COURT:  Okay.  All right, excellent.

6          Do you now wish to change your plea from not guilty

7    to guilty?

8          THE DEFENDANT:  No, your Honor.  Thank you.

9          THE COURT:  Do you want to change your plea, change

10   it from not guilty -- you've already pled not guilty, now I'm

11   wondering if you want to change your plea to guilty.  Do you

12   want to plead guilty today?

13          (Discussion held off the record.)

14          THE DEFENDANT:  Yes, your Honor, I do wish to plead

15   guilty today.

16          THE COURT:  I didn't mean to confuse you, I'm sorry.

17          THE DEFENDANT:  No, that was me, sir.

18          THE COURT:  I know this criminal process is a little

19   unusual, so I apologize.

20          All right.  Ms. Settles?

21          Would you please rise, sir?  Is it comfortable for

22   you staying in your seat?  You can stay seated, if you want.

23          THE DEFENDANT:  No, thank you, your Honor.

24          THE COURT:  Okay.

25          THE DEPUTY CLERK:  Jeffrey Lynn Forbes, you've been

charged in an information, Criminal Number 11-575, in

violation of 21 U.S.C. Section 846, attempted possession of

Oxycodone and Fentanyl; how do you plead to these charges,

guilty or not guilty?

THE DEFENDANT:  Guilty.

THE DEPUTY CLERK:  Thank you.

THE COURT:  All right, sir.  Thank you.

Now, I notice you appear to be in some pain today

and I just wanted to make sure that that pain is not

affecting your ability to understand what's happening or your

decision today?

THE DEFENDANT:  No, your Honor, it's not.

THE COURT:  Because if you want to take more time

and think about this, we can do that when you're feeling

better.

THE DEFENDANT:  No, your Honor, this is -- this is

normal, sir.

THE COURT:  Okay.  All right.

All right, I'm going to make the following finding:

That you're fully alert, competent and capable of entering an

informed plea; that your plea is knowing and voluntary plea,

supported by an independent basis in fact considering each of

the essential elements -- containing each of the essential

elements of the offenses pled to.  And your plea of guilty is

therefore accepted and you're now adjudged guilty of the

1    three offenses charged in the information.

2              A presentence report will be prepared by the

3    Probation Office.  And what I'm going to ask you to do is

4    cooperate with Mr. O'Meara and meet with the Probation

5    Officer, because the report will help them give me a better

6    picture of you and your life and what your circumstances are.

7    For example, it would be difficult for me to impose sentence

8    on you today because, other than meeting you this morning, I

9    don't know really anything about your background and this is

10   to help me get a better picture of who you really are.

11             THE DEFENDANT:  Thank you, your Honor.

12             THE COURT:  Okay.  You can have Mr. O'Meara present

13   whenever you meet with Probation, if you want.  And I would

14   ask you to sit down and review the report after it comes out.

15   If you have concerns or if you see errors in there, notify

16   the Probation Office and try to work them out; if not, you

17   can file objections with me within 14 days of getting the

18   report and I'll resolve them.

19             Now, we're going to -- I believe this date is okay

20   with everybody, sentencing on November 6th at 11:00 a.m.?

21             MR. O'MEARA:  Yes, your Honor.

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Is that convenient, Mr. O'Meara?

24             MR. O'MEARA:  That is, that's fine.

25             THE COURT:  Is that convenient for you, Mr. Forbes?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Ms. Lunkenheimer is always available, as

3     she tells me.

4          MS. LUNKENHEIMER:  I'm available.

5          THE COURT:  All right.  And I didn't get a report

6     from Pretrial Services, but do you have any issues on Mr.

7     Forbes' bail?

8          MS. LUNKENHEIMER:  It's my understanding that he has

9     not had any issues, none have been brought to my attention,

10    and he reports that he has been compliant with all of the

11    conditions.  And the one thing I didn't have the chance

12    because I was running in here to ask him was to make sure

13    that he was -- as the Court I know is inclined to do, just to

14    make sure he's getting any counseling that he would need, the

15    Court can help him get that, and I didn't get a chance to ask

16    him about that.

17         THE COURT:  Yeah, it's important, I know you have

18    some pain issues, and that you're getting all the treatment

19    that you need and you're getting all the medication,

20    counseling and advice that you need, because I can arrange

21    with Pretrial Services to help you with that.

22         THE DEFENDANT:  Thank you.

23         MR. O'MEARA:  He's actually -- if I may, your Honor?

24         THE COURT:  Sure.

25         MR. O'MEARA:  He is -- I just saw the report

1  yesterday, I couldn't find it in the file.  I was running

2  yesterday, I don't know why, it's probably on my desk right

3  now, but I did look at a report that was a drug and alcohol

4  report.  And I think it was a follow-up drug and alcohol,

5  just to make sure that he's compliant and everything is going

6  well, and it appeared everything was fine.

7          THE COURT:  Good.

8          MS. LUNKENHEIMER:  Yeah, I think our question is

9  just more beyond that, even if he's being compliant, is he --

10  does he feel that he's getting the resources he needs to be

11  successful in staying compliant, I think that's --

12          THE DEFENDANT:  Yes, I am.  Thank you.  Yes, yes,

13  your Honor.

14          THE COURT:  Okay.  If you need anything, tell Mr.

15  O'Meara and I'll help you get anything.  So, for example, if

16  you need counseling or treatment or some type of medication

17  or anything like that, we'll try to help you get it.

18          THE DEFENDANT:  Thank you, your Honor.

19          THE COURT:  Okay.  All right.  Anything else we have

20  to do today?  I'll continue bail.

21          Mr. O'Meara, did he sign the consent a form?

22          MR. O'MEARA:  I'm not sure that he signed off on it.

23  I have one here.

24          THE COURT:  Why don't you just sign it and we'll

25  docket it.

1          (Discussion held off the record.)

2          THE COURT:  Oh, one other thing while he's doing

3     that, Mr. O'Meara, are you going to be filing a 3607 request?

4          MR. O'MEARA:  Yes.

5          THE COURT:  All right.  We had a hearing on that

6     where the Government presented some evidence last week.  I'm

7     having the transcript docketed, so you can have access to it.

8     We're going to have the second half of that hearing Monday, I

9     don't know what your availability is, Monday at...

10         MS. LUNKENHEIMER:  It's Monday at 1:30, your Honor.

11         THE COURT:  1:30.

12         MS. LUNKENHEIMER:  And I did tell him and I did

13    indicate that his client should be present as well, but I was

14    telling him these are -- we're not going to present any

15    specific witnesses as to Mr. Forbes at this time, but it

16    would be beneficial for him to have the opportunity to cross-

17    examine the Government's general witnesses.

18         THE COURT:  I don't know if that works for you then,

19    I know it's late notice.

20         MR. O'MEARA:  I can be here, your Honor, no problem.

21         THE COURT:  Okay.  So we're going to be in 16 --

22         THE DEPUTY CLERK:  B.

23         THE COURT:  -- B, Judge Pollak's former courtroom,

24    at 1:30 on Monday.

25         MR. O'MEARA:  Is it 1:30 sharp or --

1          MS. LUNKENHEIMER:  Could you tell by the way I ran

2     in that this Judge runs his court on time?

3          (Laughter.)

4          MS. LUNKENHEIMER:  Yes, it's 1:30 sharp.

5          MR. O'MEARA:  Common Pleas Court -- may I approach

6     with the --

7          THE COURT:  Sure, go ahead.

8          MR. O'MEARA:  -- they have a different time clock;

9     when they say 1:30, it's 2:30.

10         THE COURT:  Oh, no.  When we say 1:30, we mean 1:30.

11         MR. O'MEARA:  Okay.

12         THE COURT:  But if you have a prior commitment and

13    you're going to be later, I'll wait for you.

14         MR. O'MEARA:  I already started clearing it --

15         THE COURT:  Okay.

16         MR. O'MEARA:  -- until Monday afternoon, I'll be

17    here.

18         THE COURT:  Okay.  Because I understand it's late

19    notice, I'll wait if you're running to courts.

20         MR. O'MEARA:  I'll call chambers if there's any

21    problems --

22         THE COURT:  Okay.

23         MR. O'MEARA:  -- but I don't foresee that.

24         THE COURT:  Excellent.  All right.  Anything

25    further?

1        MS. LUNKENHEIMER:  No, your Honor.

2        MR. O'MEARA:  No, your Honor.

3        THE COURT:  All right.  Mr. Forbes, I wish you all

4    the best, all right?

5        THE DEFENDANT:  Thank you, your Honor.

6        THE COURT:  You don't have to get up.

7        (Discussion held off the record.)

8        THE COURT:  Good luck, Mr. Forbes.

9        THE DEFENDANT:  Thank you, your Honor.

10       MR. O'MEARA:  Thank you, your Honor.

11       THE COURT:  All right, Ms. Lunkenheimer.

12       MS. LUNKENHEIMER:  Take care, your Honor.

13       THE COURT:  Sharon, thank you.

14       THE AUDIO OPERATOR:  You're welcome.

15       MS. LUNKENHEIMER:  Thank you for your patience this

16   morning.

17       THE COURT:  Oh, sure, no problem.

18       (Hearing adjourned at 9:28 o'clock a.m.)

19                              * * *

<u>CERTIFICATION</u>

        I hereby certify that the foregoing is a correct

transcript from the electronic sound recording of the

proceedings in the above-entitled matter.




s:/Geraldine C. Laws, CET            Dated 10/3/12
Laws Transcription Service